**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,<br><br>    Debtors. | Chapter 11<br><br>Case No. 22-11068 (KBO)<br><br>(Jointly Administered) |
| FTX RECOVERY TRUST,<br><br>                    Plaintiff,<br><br>- against -<br><br>NFT STARS LIMITED,<br><br>                    Defendant. | Adv. Pro. No. 25-_____(KBO) |

**COMPLAINT FOR TURNOVER OF ASSETS PURSUANT TO 11 U.S.C. § 542, VIOLATION OF THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362, AND FOR BREACH OF CONTRACT**

Plaintiff FTX Recovery Trust, through its undersigned counsel, for its complaint against Defendant NFT Stars Limited ("NFT Stars" or "Defendant"), alleges the following based upon personal knowledge and upon its investigation to date as to itself and its own acts, and upon information and belief as to all other matters:

**NATURE OF THE CASE**

1.  Plaintiff brings this adversary proceeding ("Adversary Proceeding") pursuant to Sections 105 and 542 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") to recover 831,691 SENATE and 83,169,187 SIDUS tokens (together, the "Tokens") from Defendant. Plaintiff also brings a claim against Defendant for a violation of the automatic stay pursuant to Section 362 of the Bankruptcy Code for Defendant's actions affecting property of the estate and a common law claim for breach of contract.

2.	On November 11 and November 14, 2022 (as applicable, the "Petition Date"), FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors" and each a "Debtor") filed with the United States Bankruptcy Court for the District of Delaware (the "Court") voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. On October 8, 2024, the Court entered an order confirming the *Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D. I. 26404] (the "Plan"), which became effective on January 3, 2025 [D.I. 29127] (the "Plan Effective Date").

3.	Debtor Maclaurin Investment Ltd. f/k/a Alameda Ventures Ltd. ("Maclaurin") is a wholly owned subsidiary of Alameda Research Ltd., which is a wholly owned subsidiary of Debtor Alameda Research LLC. Prior to the filing of the Chapter 11 Cases, Maclaurin engaged in venture investing in early-stage companies in the cryptocurrency, blockchain, and fintech industries.

4.	Upon the Plan Effective Date, all assets of Maclaurin and all the other FTX Debtors, including all claims and causes of action, were transferred to and vested in Plaintiff, a Delaware statutory trust operated for the benefit of creditors arising out of the collapse of FTX. Accordingly, Plaintiff has the authority to file this Complaint to commence, and thereafter to prosecute, this Adversary Proceeding.

5.	Defendant NFT Stars is a token issuer that issues SENATE tokens and SIDUS tokens.

6.	Before the launch of the Tokens, Maclaurin purchased the right to receive Tokens through a Simple Agreements for Future Token, which is an investment contract offered by cryptocurrency developers to help fund new ventures including, as here, the development of new tokens.

7. Pursuant to the Simple Agreement for Future Tokens between Maclaurin and Defendant executed on November 26, 2021 (the "SAFT"), Maclaurin agreed to make an upfront cash payment in exchange for the right to receive SENATE tokens and SIDUS tokens upon their launch. Maclaurin paid the equivalent of $325,000 in cryptocurrency for the right to receive 1,354,166 SENATE tokens and 135,416,666 SIDUS tokens once those tokens had launched, subject to an unlocking schedule.

8. On November 26, 2021, the same day the SAFT was executed, Maclaurin transmitted the equivalent of $325,000 in cryptocurrency to Defendant in satisfaction of its obligation under the SAFT.

9. The Tokens launched on December 15, 2021. Under the terms of the unlocking schedule in the SAFT, 5% of the Tokens were due to Maclaurin at launch. Beginning April 15, 2021, an additional 5% were due to Maclaurin every month through October 2023, at which point all of the SENATE tokens and SIDUS tokens would have unlocked.

10. As of the Petition Date, Defendant had transferred to Plaintiff all of the SENATE tokens and SIDUS tokens owed to Maclaurin through the end of September 2022. However, after the filing of the Chapter 11 Cases, Defendant failed to make any further deliveries of Tokens owed to Maclaurin under the SAFT.

11. After the filing of the Chapter 11 Cases, the Plaintiff's advisors contacted Defendant on Plaintiff's behalf to seek the outstanding 831,691 SENATE tokens and 83,169,187 SIDUS tokens owed to Plaintiff under the SAFT.

12. As of today, 831,691 SENATE tokens and 83,169,187 SIDUS tokens are owed to Maclaurin under the SAFT. This Adversary Proceeding seeks the turnover of the outstanding Tokens owed to Plaintiff and held by Defendant.

13. During the course of this Adversary Proceeding, Plaintiff may learn (through discovery or otherwise) of additional property of the Plaintiff subject to turnover under Section 542 of the Bankruptcy Code, or of transfers made to Defendant that are avoidable under applicable law. Plaintiff intends to recover all such property. Plaintiff reserves the right to amend this Complaint.

## JURISDICTION AND VENUE

14. This Adversary Proceeding relates to the Plaintiff's Chapter 11 Cases filed with this Court on the Petition Date. The Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.

15. This Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Court may enter final orders herein.

16. Venue of this Adversary Proceeding in this District is proper pursuant to 28 U.S.C. § 1409, and venue in this District is consistent with the interests of justice, judicial economy, and fairness.

17. The statutory predicates for the relief requested herein are Sections 105, 362, and 542 of the Bankruptcy Code.

18. This Adversary Proceeding is commenced pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure because, at a minimum, it seeks, among other things, to recover money or property belonging to the Debtors' Chapter 11 estates. Fed. R. Bankr. P. 7001(1).

19. Pursuant to Rule 7008-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, Plaintiff consents to the entry of final orders and judgments by the Court on these claims to the extent that it is later determined

that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## THE PARTIES

20. Plaintiff FTX Recovery Trust is Delaware statutory trust created and implemented pursuant to the Plan, and the sole owner by assignment of all rights and assets of Maclaurin under the Plan as confirmed by the Court.

21. Defendant NFT Stars is a company incorporated in the Seychelles. It develops, issues, and operates the SENATE tokens and SIDUS tokens, and markets them including in the United States.

22. At all relevant times, the SENATE tokens and SIDUS tokens have been issued and operated by Defendant.

## OTHER RELEVANT PERSONS

23. Maclaurin is a limited company incorporated in the Seychelles. It is a wholly owned subsidiary of Alameda Research Ltd., a British Virgin Islands company limited by shares.

24. Alameda Research Ltd. is a wholly owned subsidiary of Alameda Research LLC, a Delaware limited liability company.

25. SIDUS HEROES LTD is a corporation incorporated in the Seychelles that develops blockchain gaming platforms. SIDUS HEROES LTD developed SIDUS HEROES, a Web3, AI-powered space-themed gaming platform.

## FACTUAL ALLEGATIONS

26. Prior to the filing of the Chapter 11 Cases, Maclaurin engaged in venture capital investing in the cryptocurrency, blockchain, and fintech industries. It primarily targeted seed to early-stage investments in companies with a geographic focus on Asia and North America.

27. Between 2020 and 2021, Maclaurin made a number of investments in decentralized finance business ventures.

28. Upon information and belief, by late 2021, Defendant had solicited Maclaurin and other entities to invest in the pre-launch SENATE tokens and SIDUS tokens.

29. The SENATE tokens and SIDUS tokens were designed to be issued and administered in the SIDUS HEROES metaverse, a Web3, AI-powered space-themed gaming platform.

30. The SENATE token is the governance token of the SIDUS HEROES metaverse. The SENATE token is used for various in-game functions such as participating in elections, real-estate transactions, spaceship construction, and voting processes.

31. The SIDUS token is the utility token of the SIDUS HEROES metaverse. The SIDUS token is used for various in-game processes such as purchasing heroes and items, upgrading them, and trading in the in-game store.

## I. The SAFT

32. On or about November 26, 2021, Maclaurin entered into a SAFT with Defendant.

33. Under the SAFT, Maclaurin agreed to make an upfront cash payment in exchange for the right to receive SENATE tokens and SIDUS tokens once the Tokens had launched. The launch, referred to in the SAFT as the Tokens Generation Event ("TGE"), occurred on December 15, 2021.

34. Pursuant to the SAFT, Maclaurin would receive a total of 1,354,166 SENATE tokens and 135,416,666 SIDUS tokens—5% of the Tokens—on the date of the TGE, subject to an unlocking provision. Starting four months after the TGE, Maclaurin would receive an additional 5% of the Tokens every month until it had received all of the Tokens.

35. On November 26, 2021, Maclaurin paid $325,000 USDC[1] to Defendant in satisfaction of its obligation under the SAFT.

36. The TGE occurred on December 15, 2021, when the SENATE tokens and SIDUS tokens were launched.[2] Under the SAFT, Maclaurin was entitled to and did receive 67,708 SENATE tokens and 6,770,833 SIDUS tokens on December 15, 2021.

37. Pursuant to the SAFT, starting on April 15, 2022, Maclaurin was supposed to receive an additional 67,708 SENATE tokens and 6,770,833 SIDUS tokens each month until October 7, 2023, at which point Maclaurin should have received all of the Tokens it was owed under the SAFT.

38. To date, Defendant has only transferred a total of 522,474 SENATE tokens and 52,247,478 SIDUS tokens to Maclaurin.

39. In total, Defendants failed to transfer to Maclaurin 831,691 SENATE tokens and 83,169,187 SIDUS tokens owed to Maclaurin under the SAFT.

40. Between October 12, 2022 and April 27, 2025, the average value of the SENATE token was $0.062 per token, with a peak value of $0.328 per token on December 8, 2023. Between October 12, 2022 and April 27, 2025, the average value of the SIDUS token was $0.0032 per token, with a peak value of $0.0148 per token on April 1, 2024.

---

[1] USDC is a stablecoin digital currency maintained by Circle Internet Financial, LLC that is pegged to the value of the U.S. Dollar and backed by cash and other liquid assets. USDC is redeemable 1:1 for U.S. dollars. *See, e.g.*, *USDC*, CIRCLE, https://www.circle.com/usdc (last visited Mar. 31, 2025).

[2] *See e.g.*, SIDUS HEROES, *SIDUS HEROES IDO is ready to take off! All you need to know so far*, MEDIUM (Dec. 14, 2021), https://medium.com/sidus-nft-heroes/sidus-heroes-ido-is-ready-to-take-off-12fa71c16af1; *SIDUS HEROES Tokenomics*, SIDUS HEROES, https://sidusheroes.com/project/tokenomics (last visited Mar. 28, 2025).

## II. Attempted Communication with Defendant

41. After filing of the Chapter 11 Cases, and on multiple occasions thereafter, Plaintiff's advisors attempted to contact Defendant on Maclaurin's behalf to obtain the remaining SENATE tokens and SIDUS tokens owed to Maclaurin under the SAFT. These attempts accelerated after October 7, 2023, when all of the tokens owed to Maclaurin under the SAFT should have vested.

42. Between June 2023 and September 2024, Plaintiff's advisors contacted Defendant fifteen times. Defendant did not respond to any of these communications.

## III. The FTX Recovery Trust Attains Standing to Sue Defendant

43. On October 8, 2024, this Court entered an order confirming the Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates [D. I. 26404], which became effective on January 3, 2025 [D.I. 29127].

44. Upon the Plan Effective Date, all rights and assets of the FTX Debtors, including all claims and causes of action of Maclaurin, were transferred to and vested in Plaintiff FTX Recovery Trust.

45. Section 542(a) of the Bankruptcy Code mandates that "an entity, other than a custodian, in possession, custody, or control during the case, of property that the trustee may use, sell, or lease under section 363 of this title . . . shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." 11 U.S.C. § 542(a).

46. The Tokens are property of the Debtors' estate pursuant to Section 541(a)(1) of the Bankruptcy Code, which defines "property of the estate" to include, among other things, "all legal

or equitable interests of the debtor in property as of the commencement of the case," "wherever located and by whomever held." 11 U.S.C. § 541(a).[3]

47. "Congress intended that property of the estate be broadly inclusive of all interests that the debtor has under state law." *In re Barksdale*, 281 B.R. 548, 551 (Bankr. D.N.J. 2002). "[T]he Bankruptcy Code is not concerned with the 'technicalities of title' when it comes to determining property of the estate." *In re NJ Affordable Homes Corp.*, 2006 WL 2128624, at *8 (Bankr. D.N.J. June 29, 2006) (cleaned up). Instead, property belongs to the estate where the debtor controls the property or otherwise indicates its "legal or equitable interests" in the property. *E.g.*, *In re Schwartz*, 2014 WL 2621114, at *5 (Bankr. D.N.J. June 12, 2014) (holding that bank account not in debtor's name was nevertheless property of the estate where debtor funded account, showed "ownership, control, and interest" in account, and money "functionally belonged" to debtor).

## CAUSES OF ACTION

### COUNT ONE
### TURNOVER CLAIM PURSUANT TO 11 U.S.C. § 542

48. Plaintiff repeats and realleges the allegations in paragraphs 1 through 47 as if fully set forth here.

49. As alleged above, Defendant continues to withhold 831,691 SENATE tokens and 83,169,187 SIDUS tokens owed to Maclaurin under the SAFT, which are Plaintiff's assets, that are not of inconsequential value. Plaintiff seeks an order from the Court directing Defendant to turn over to Plaintiff the remaining 831,691 SENATE tokens and 83,169,187 SIDUS tokens that

---

[3] In addition, insofar as Defendant qualifies as a custodian under Bankruptcy Code section 543, it is obligated to "deliver to the [Debtors] any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case." 11 U.S.C. § 543(b).

are due under the SAFT, which are Plaintiff's property pursuant to Bankruptcy Code Section 541(a)(1).

50.     The relief requested also is authorized under the Court's equitable powers codified in section 105(a) of the Bankruptcy Code. Pursuant to that section, this Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a).

## COUNT TWO
## VIOLATION OF THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(a)(3), (k)

51.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 47 as if fully set forth here.

52.     Section 362(a)(3) of the Bankruptcy Code provides, in relevant part, that a petition "filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of . . . any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

53.     Plaintiff's SENATE tokens and SIDUS tokens withheld by Defendant comprise property of the Debtors' estate under Section 541 of the Bankruptcy Code. *See* 11 U.S.C. § 541(a)(1) (Estate property is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case").

54.     Section 362(k) of the Bankruptcy Code permits an individual injured by a willful violation of the automatic stay to recover "actual damages, including costs and attorneys' fees, and, in appropriate circumstances, [to] recover punitive damages." *See* 11 U.S.C. § 362(k)(1).

55.     Defendant's decision to withhold from Plaintiff Tokens owed to Maclaurin under the SAFT warrants both actual and punitive damages to be determined by the Court based on the

depletion of estate assets, including any losses in value of the SENATE tokens and SIDUS tokens withheld by Defendant resulting from Defendant's actions, as well as costs and attorneys' fees.

## COUNT THREE
## BREACH OF CONTRACT UNDER SEYCHELLES LAW

56. Plaintiff repeats and realleges the allegations in paragraphs 1 through 47 as if fully set forth here.

57. On November 26, 2021, Maclaurin and Defendant entered into the valid and legally binding SAFT.

58. The SAFT required Defendant to deliver 1,354,166 SENATE tokens and 135,416,666 SIDUS tokens to Maclaurin upon the occurrence of the TGE, subject to the unlocking schedule outlined in paragraph 34, *supra*.

59. The TGE occurred on December 15, 2021. Pursuant to the relevant unlocking schedule, Defendant was obligated to provide SENATE tokens and SIDUS tokens on a monthly basis to Maclaurin beginning on April 15, 2022, with all tokens due to be unlocked by October 7, 2023.

60. Maclaurin fulfilled its obligation under the SAFT when it transferred $325,000 USDC to Defendant on November 26, 2021.

61. To date, Defendant has not delivered 831,691 SENATE tokens and 83,169,187 SIDUS tokens owed to Maclaurin under the SAFT.

62. As of April 27, 2025, the SENATE tokens are valued at $0.01 per token. Between October 12, 2022, and the date of this filing, the SENATE token reached a peak value of $0.328 per token on December 8, 2023, at which point all of the Tokens were due and should have been delivered to Maclaurin.

63. Had Defendant provided to Maclaurin the SENATE tokens pursuant to the SAFT unlocking schedule, Plaintiff could have realized up to $261,000 by selling the SENATE tokens at the post-unlocking price peaks.

64. As of April 27, 2025, the SIDUS tokens are valued at $0.0011 per token. Between October 12, 2022 and April 27, 2025, the SIDUS token reached a peak value of $0.0148 per token on April 1, 2024, at which point all of the Tokens were due and should have been delivered to Maclaurin.

65. Had Defendant provided to Maclaurin the SIDUS tokens pursuant to the SAFT unlocking schedule, Plaintiff could have realized up to $1,200,000 by selling the SIDUS tokens at the post-unlocking price peaks.

66. As a direct and proximate result of Defendant's breach of the SAFT, Plaintiff has been damaged and suffered losses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court:

67. Enter an order under 11 U.S.C. §§ 542 and 105(a) directing the turnover of 831,691 SENATE tokens and 83,169,187 SIDUS tokens to Plaintiff;

68. Enter an order under 11 U.S.C. § 362(k) awarding actual and punitive damages to Plaintiff for Defendant's violation of the automatic stay;

69. Enter an order requiring that Defendant specifically perform its obligations under the SAFT by transferring 831,691 SENATE tokens and 83,169,187 SIDUS tokens owed to Plaintiff;

70. Enter an order requiring the Defendant to pay Plaintiff compensatory damages for breach of the SAFT, in an amount to be determined at trial;

71. Award Plaintiff its attorneys' fees, pre- and post-judgment interests, and costs of suit; and

72. Award Plaintiff all other relief, at law or equity, to which it may be entitled.

| | |
|---|---|
| Dated: April 28, 2025<br>Wilmington, Delaware | **LANDIS RATH & COBB LLP**<br><br>*/s/ Matthew B. McGuire*<br>Adam G. Landis (No. 3407)<br>Richard S. Cobb (No. 3157)<br>Matthew B. McGuire (No. 4366)<br>Howard W. Robertson IV (No. 6903)<br>919 Market Street, Suite 1800<br>Wilmington, Delaware 19801<br>Telephone: (302) 467-4400<br>Facsimile: (302) 467-4450<br>E-mail: landis@lrclaw.com<br>        cobb@lrclaw.com<br>        mcguire@lrclaw.com<br>        robertson@lrclaw.com<br><br>-and-<br><br>**SULLIVAN & CROMWELL LLP**<br>Stephanie G. Wheeler (admitted *pro hac vice*)<br>Brian D. Glueckstein (admitted *pro hac vice*)<br>Christopher J. Dunne (admitted *pro hac vice*)<br>Jacob M. Croke (admitted *pro hac vice*)<br>125 Broad Street<br>New York, NY 10004<br>Telephone: (212) 558-4000<br>Facsimile: (212) 558-3588<br>E-mail: wheelers@sullcrom.com<br>        gluecksteinb@sullcrom.com<br>        dunnec@sullcrom.com<br>        crokej@sullcrom.com<br><br>*Counsel for the Plaintiff FTX Recovery Trust* |