## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*, | Case No. 22-11068 (KBO) |
| Debtors. | (Jointly Administered) |
| FTX RECOVERY TRUST, | |
| Plaintiff, | |
| - against - | |
| NFT STARS LIMITED, | Adv. Pro. No. 25-50636 (KBO) |
| Defendant. | |

### AMENDED COMPLAINT FOR TURNOVER OF ASSETS PURSUANT TO 11 U.S.C. § 542, VIOLATION OF THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362, AND FOR BREACH OF CONTRACT

Plaintiff FTX Recovery Trust, through its undersigned counsel, for its complaint against Defendant NFT Stars Limited ("NFT Stars" or "Defendant"), alleges the following based upon personal knowledge and upon its investigation to date as to itself and its own acts, and upon information and belief as to all other matters:

### NATURE OF THE CASE

1.     Plaintiff brings this adversary proceeding ("Adversary Proceeding") pursuant to Sections 105 and 542 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code") to recover 2,456,692 SENATE and 245,669,188 SIDUS tokens (together, the "Tokens") from Defendant.  Plaintiff also brings a claim against Defendant for a violation of the automatic stay pursuant to Section 362 of the Bankruptcy Code for Defendant's actions affecting property of the estate and a common law claim for breach of contract.

2.      On November 11 and November 14, 2022 (as applicable, the "Petition Date"),

FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the

"Debtors" and each a "Debtor") filed with the United States Bankruptcy Court for the District of

Delaware (the "Court") voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

On October 8, 2024, the Court entered an order confirming the *Second Amended Joint Chapter

11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 26404] (the

"Plan"), which became effective on January 3, 2025 [D.I. 29127] (the "Plan Effective Date").

3.      Debtor Maclaurin Investment Ltd. f/k/a Alameda Ventures Ltd. ("Maclaurin") is a

wholly owned subsidiary of Alameda Research Ltd., which is a wholly owned subsidiary of

Debtor Alameda Research LLC.  Prior to the filing of the Chapter 11 Cases, Maclaurin engaged

in venture investing in early-stage companies in the cryptocurrency, blockchain, and fintech

industries.

4.      Upon the Plan Effective Date, all assets of Maclaurin and all the other FTX

Debtors, including all claims and causes of action, were transferred to and vested in Plaintiff, a

Delaware statutory trust operated for the benefit of creditors arising out of the collapse of FTX.

Accordingly, Plaintiff has the authority to file this Complaint to commence, and thereafter to

prosecute, this Adversary Proceeding.

5.      Defendant NFT Stars is a token issuer that issues SENATE tokens and SIDUS

tokens.

6.      Before the launch of the Tokens, Maclaurin purchased the right to receive tokens

through two Simple Agreements for Future Tokens, which are investment contracts offered by

cryptocurrency developers to help fund new ventures including, as here, the development of new

tokens.

7.      Pursuant to a Simple Agreement for Future Tokens between Maclaurin and Defendant executed on November 26, 2021 ("SAFT 1"), Maclaurin agreed to pay $325,000 in exchange for the right to receive 1,625,000 SENATE tokens and 162,500,000 SIDUS tokens once those tokens launched.  The tokens would then unlock in multiple tranches thereafter, pursuant to an unlocking schedule in SAFT 1 that applied to both tokens.

8.      Pursuant to a second Simple Agreement for Future Tokens between Maclaurin and Defendant executed on November 26, 2021 ("SAFT 2," together with SAFT 1, the "SAFTs"), Maclaurin agreed to pay $325,000 in exchange for the right to receive 1,354,166 SENATE tokens and 135,416,666 SIDUS tokens once those tokens launched.  The tokens would then unlock in multiple tranches thereafter, pursuant to an unlocking schedule in SAFT 2 that applied to both tokens.

9.      On November 26, 2021, the same day the SAFTs were executed, Maclaurin transmitted the equivalent of $650,000 in cryptocurrency to Defendant in satisfaction of its obligations under the SAFTs.

10.     The Tokens launched on December 15, 2021.  Under the terms of the SAFTs, the Tokens were to be delivered at launch, and 5% of the Tokens were to unlock at that time. Beginning on April 15, 2021, an additional 5% of the Tokens were to unlock every month through October 2023, at which point all of the SENATE tokens and SIDUS tokens would have been unlocked.

11.      To date, Defendant has not delivered *any* of the Tokens owed to Plaintiff, as Maclaurin's successor in interest, pursuant to SAFT 1.

12.     As of the Petition Date, Defendant had delivered to Plaintiff 522,474 SENATE tokens and 52,247,478 SIDUS under SAFT 2, all of which were unlocked by October 15, 2022.

However, after the filing of the Chapter 11 Cases, Defendant failed to make any further deliveries of Tokens owed to Maclaurin under SAFT 2.

13.     After the filing of the Chapter 11 Cases, the Plaintiff's advisors contacted Defendant on Plaintiff's behalf to seek the outstanding 2,456,692 SENATE tokens and 245,669,188 SIDUS tokens owed to Plaintiff under the SAFTs.

14.     As of today, 1,625,000 SENATE tokens and 162,500,000 SIDUS tokens are owed to Plaintiff under SAFT 1, and 831,692 SENATE tokens and 83,169,188 SIDUS tokens are owed to Plaintiff under SAFT 2.  This Adversary Proceeding seeks the turnover of the outstanding Tokens owed to Plaintiff and held by Defendant.

15.     During the course of this Adversary Proceeding, Plaintiff may learn (through discovery or otherwise) of additional property of the Plaintiff subject to turnover under Section 542 of the Bankruptcy Code, or of transfers made to Defendant that are avoidable under applicable law.  Plaintiff intends to recover all such property.  Plaintiff reserves the right to further amend this Complaint.

## JURISDICTION AND VENUE

16.     This Adversary Proceeding relates to the Plaintiff's Chapter 11 Cases filed with this Court on the Petition Date.  The Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.

17.     This Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Court may enter final orders herein.

18.     Venue of this Adversary Proceeding in this District is proper pursuant to 28 U.S.C. § 1409, and venue in this District is consistent with the interests of justice, judicial economy, and fairness.

4

19.     The statutory predicates for the relief requested herein are Sections 105, 362, and 542 of the Bankruptcy Code.

20.     This Adversary Proceeding is commenced pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure because, at a minimum, it seeks, among other things, to recover money or property belonging to the Debtors' Chapter 11 estates.  Fed. R. Bankr. P. 7001(1).

21.     Pursuant to Rule 7008-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, Plaintiff consents to the entry of final orders and judgments by the Court on these claims to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## THE PARTIES

22.     Plaintiff FTX Recovery Trust is a Delaware statutory trust created and implemented pursuant to the Plan, and the sole owner by assignment of all rights and assets of Maclaurin under the Plan as confirmed by the Court.

23.     Defendant NFT Stars is a company incorporated in the Seychelles.  It develops, issues, and operates the SENATE tokens and SIDUS tokens, and markets them including in the United States.

24.     At all relevant times, the SENATE tokens and SIDUS tokens have been issued and operated by Defendant.

## OTHER RELEVANT PERSONS

25.     Maclaurin is a limited company incorporated in the Seychelles.  It is a wholly owned subsidiary of Alameda Research Ltd., a British Virgin Islands company limited by shares.

26.     Alameda Research Ltd. is a wholly owned subsidiary of Alameda Research LLC, a Delaware limited liability company.

27.     SIDUS HEROES LTD is a corporation incorporated in the Seychelles that develops blockchain gaming platforms.  SIDUS HEROES LTD developed SIDUS HEROES, a Web3, AI-powered space-themed gaming platform.

## FACTUAL ALLEGATIONS

28.     Prior to the filing of the Chapter 11 Cases, Maclaurin engaged in venture capital investing in the cryptocurrency, blockchain, and fintech industries.  It primarily targeted seed to early-stage investments in companies with a geographic focus on Asia and North America.

29.     Between 2020 and 2021, Maclaurin made a number of investments in decentralized finance business ventures.

30.     Upon information and belief, by late 2021, Defendant had solicited Maclaurin and other entities to invest in the pre-launch SENATE tokens and SIDUS tokens.

31.     The SENATE tokens and SIDUS tokens were designed to be issued and administered in the SIDUS HEROES metaverse, a Web3, AI-powered space-themed gaming platform.

32.     The SENATE token is the governance token of the SIDUS HEROES metaverse. The SENATE token is used for various in-game functions such as participating in elections, real-estate transactions, spaceship construction, and voting processes.

33.     The SIDUS token is the utility token of the SIDUS HEROES metaverse.  The SIDUS token is used for various in-game processes such as purchasing heroes and items, upgrading them, and trading in the in-game store.

## I.     The SAFTs

34.     On or about November 26, 2021, Maclaurin entered into two SAFTs with Defendant.  Under SAFT 1, Maclaurin agreed to pay $325,000 in exchange for the right to receive 1,625,000 SENATE tokens and 162,500,000 SIDUS tokens once the tokens launched.

Under SAFT 2, Maclaurin agreed to pay $325,000 in exchange for the right to receive 1,354,166 SENATE tokens and 135,416,666 SIDUS tokens once the tokens launched.

35.     The launch, referred to in the SAFTs as the Tokens Generation Event ("TGE"), occurred on December 15, 2021.[1]

36.     Pursuant to SAFT 1, Maclaurin was to receive a vested total of 81,250 SENATE tokens and 8,125,000 SIDUS tokens—5% of the tokens under SAFT 1—on the date of the TGE. Starting four months after the TGE, Maclaurin was to receive an additional 5% of the tokens every month until it had received all of the tokens under SAFT 1.

37.     Pursuant to SAFT 2, Maclaurin was to receive a vested total of 67,708 SENATE tokens and 6,770,833 SIDUS tokens—5% of the tokens under SAFT 2—on the date of the TGE. Starting four months after the TGE, Maclaurin was to receive an additional 5% of the tokens every month until it had received all of the tokens under SAFT 2.

38.     All other terms in SAFT 1 and SAFT 2 are identical.

39.     On November 26, 2021, Maclaurin paid $650,000 in USDC[2] to Defendant in satisfaction of its obligation under the SAFTs.

40.     Upon the TGE, Maclaurin was entitled to receive 81,250 SENATE and 8,125,000 SIDUS tokens under SAFT 1, which Maclaurin did not receive.  Upon the TGE, Maclaurin was

---

[1]     *See, e.g.*, SIDUS HEROES, *SIDUS HEROES IDO is ready to take off! All you need to know so far*, MEDIUM (Dec. 14, 2021), https://medium.com/sidus-nft-heroes/sidus-heroes-ido-is-ready-to-take-off-12fa71c16af1; *SIDUS HEROES Tokenomics*, SIDUS HEROES, https://sidusheroes.com/project/tokenomics (last visited Mar. 28, 2025).

[2]     USDC is a stablecoin digital currency maintained by Circle Internet Financial, LLC that is pegged to the value of the U.S. Dollar and backed by cash and other liquid assets.  USDC is redeemable 1:1 for U.S. dollars.  *See, e.g.*, *USDC*, CIRCLE, https://www.circle.com/usdc (last visited Mar. 31, 2025).

also entitled to receive 67,708 SENATE tokens and 6,770,833 SIDUS tokens under SAFT 2, which Maclaurin did receive on December 15, 2021.

41.     Pursuant to the SAFTs, starting on April 15, 2022, an additional 148,958 SENATE tokens and 14,895,833 SIDUS tokens were to unlock each month until October 15, 2023, at which point all of the tokens Maclaurin was entitled to receive under the SAFTs would have been unlocked.

42.     To date, Defendant has only delivered a total of 522,474 SENATE tokens and 52,247,478 SIDUS tokens to Maclaurin, pursuant to SAFT 2, and delivered no tokens pursuant to SAFT 1.

43.     In total, Defendants failed to deliver to Maclaurin 2,456,692 SENATE tokens and 245,669,188 SIDUS tokens owed to Maclaurin under the SAFTs.

44.     Between December 16, 2021 and September 3, 2025, the average value of the SENATE token was $0.217 per token, with a peak value of $5.147 per token on January 1, 2022. Between December 16, 2021 and September 3, 2025, the average value of the SIDUS token was $0.008 per token, with a peak value of $0.18 per token on January 1, 2022.

**II.     Attempted Communication with Defendant**

45.     After the filing of the Chapter 11 Cases, and on multiple occasions thereafter, Plaintiff's advisors attempted to contact Defendant on Maclaurin's behalf to obtain the remaining SENATE tokens and SIDUS tokens owed to Maclaurin under the SAFTs.  These attempts accelerated after October 15, 2023, when all of the tokens owed to Maclaurin under the SAFTs should have been unlocked.

46.     Between June 2023 and September 2024, Plaintiff's advisors contacted Defendant fifteen times.  Defendant did not respond to any of these communications.

III.    **The FTX Recovery Trust Attains Standing to Sue Defendant**

47.    On October 8, 2024, this Court entered an order confirming the Second Amended

Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates

[D.I. 26404], which became effective on January 3, 2025 [D.I. 29127].

48.    Upon the Plan Effective Date, all rights and assets of the FTX Debtors, including

all claims and causes of action of Maclaurin, were transferred to and vested in Plaintiff FTX

Recovery Trust.

49.    Section 542(a) of the Bankruptcy Code mandates that "an entity, other than a

custodian, in possession, custody, or control during the case, of property that the trustee may use,

sell, or lease under section 363 of this title . . . shall deliver to the trustee, and account for, such

property or the value of such property, unless such property is of inconsequential value or benefit

to the estate." 11 U.S.C. § 542(a).

50.    The Tokens are property of the Debtors' estate pursuant to Section 541(a)(1) of the

Bankruptcy Code, which defines "property of the estate" to include, among other things, "all legal

or equitable interests of the debtor in property as of the commencement of the case," "wherever

located and by whomever held." 11 U.S.C. § 541(a).[3]

51.    "Congress intended that property of the estate be broadly inclusive of all interests

that the debtor has under state law." *In re Barksdale*, 281 B.R. 548, 551 (Bankr. D.N.J. 2002).

"[T]he Bankruptcy Code is not concerned with the 'technicalities of title' when it comes to

determining property of the estate." *In re NJ Affordable Homes Corp.*, 2006 WL 2128624, at *8

---

[3]    In addition, insofar as Defendant qualifies as a custodian under Bankruptcy Code section 543, it is obligated
to "deliver to the [Debtors] any property of the debtor held by or transferred to such custodian, or proceeds,
product, offspring, rents, or profits of such property, that is in such custodian's possession, custody, or control
on the date that such custodian acquires knowledge of the commencement of the case." 11 U.S.C. § 543(b).

(Bankr. D.N.J. June 29, 2006) (cleaned up).  Instead, property belongs to the estate where the debtor controls the property or otherwise indicates its "legal or equitable interests" in the property.  *E.g.*, *In re Schwartz*, 2014 WL 2621114, at *5 (Bankr. D.N.J. June 12, 2014) (holding that bank account not in debtor's name was nevertheless property of the estate where debtor funded account, showed "ownership, control, and interest" in account, and money "functionally belonged" to debtor).

## CAUSES OF ACTION

### COUNT ONE
### TURNOVER CLAIM PURSUANT TO 11 U.S.C. § 542

52.      Plaintiff repeats and realleges the allegations in paragraphs 1 through 51 as if fully set forth here.

53.      As alleged above, Defendant continues to withhold 2,456,692 SENATE tokens and 245,669,188 SIDUS tokens owed to Maclaurin under the SAFTs, which are Plaintiff's assets, that are not of inconsequential value.  Plaintiff seeks an order from the Court directing Defendant to turn over to Plaintiff the remaining 2,456,692 SENATE tokens and 245,669,188 SIDUS tokens that are due under the SAFTs, which are Plaintiff's property pursuant to Bankruptcy Code Section 541(a)(1).

54.      The relief requested also is authorized under the Court's equitable powers codified in section 105(a) of the Bankruptcy Code.  Pursuant to that section, this Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code.  11 U.S.C. § 105(a).

### COUNT TWO
### VIOLATION OF THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(a)(3), (k)

55.      Plaintiff repeats and realleges the allegations in paragraphs 1 through 51 as if fully set forth here.

56.     Section 362(a)(3) of the Bankruptcy Code provides, in relevant part, that a petition "filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of . . . any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  11 U.S.C. § 362(a)(3).

57.     Plaintiff's SENATE tokens and SIDUS tokens withheld by Defendant comprise property of the Debtors' estate under Section 541 of the Bankruptcy Code.  *See* 11 U.S.C. § 541(a)(1) (estate property is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case").

58.     Section 362(k) of the Bankruptcy Code permits an individual injured by a willful violation of the automatic stay to recover "actual damages, including costs and attorneys' fees, and, in appropriate circumstances, [to] recover punitive damages."  *See* 11 U.S.C. § 362(k)(1).

59.     Defendant's decision to withhold from Plaintiff Tokens owed to Maclaurin under the SAFTs warrants both actual and punitive damages to be determined by the Court based on the depletion of estate assets, including any losses in value of the SENATE tokens and SIDUS tokens withheld by Defendant resulting from Defendant's actions, as well as costs and attorneys' fees.

## COUNT THREE
## BREACH OF CONTRACT UNDER SEYCHELLES LAW

60.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 51 as if fully set forth here.

61.     On November 26, 2021, Maclaurin and Defendant entered into two valid and legally binding SAFTs.

62.     The SAFTs required Defendant to deliver 2,979,166 SENATE tokens and 297,916,666 SIDUS tokens to Maclaurin upon the occurrence of the TGE, subject to the unlocking schedule outlined in paragraphs 36–37, *supra*.

63.    The TGE occurred on December 15, 2021.  Pursuant to the relevant unlocking schedule, beginning on April 15, 2022, Defendant was obligated to unlock SENATE tokens and SIDUS tokens on a monthly basis to Maclaurin, with all tokens due to have been unlocked by October 15, 2023.

64.    Maclaurin fulfilled its obligation under the SAFTs when it transferred $650,000 in USDC to Defendant on November 26, 2021.

65.    To date, Defendant has not delivered 2,456,692 SENATE tokens and 245,669,188 SIDUS tokens owed to Maclaurin under the SAFTs.

66.    As of September 3, 2025, the SENATE tokens are valued at $0.0077 per token. Between December 16, 2021 and September 3, 2025, the SENATE token reached a peak value of $5.147 per token on January 1, 2022.

67.    Had Defendant provided to Maclaurin the SENATE tokens pursuant to the SAFTs' unlocking schedules, Plaintiff could have realized up to $1,170,885 by selling the SENATE tokens at the post-unlocking price peaks.

68.    As of September 3, 2025, the SIDUS tokens are valued at $0.0005 per token. Between December 16, 2021 and September 3, 2025, the SIDUS token reached a peak value of $0.18 per token on January 1, 2022.

69.    Had Defendant provided to Maclaurin the SIDUS tokens pursuant to the SAFTs' unlocking schedules, Plaintiff could have realized up to $4,796,808 by selling the SIDUS tokens at the post-unlocking price peaks.

70.    As a direct and proximate result of Defendant's breach of the SAFTs, Plaintiff has been damaged and suffered losses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court:

71.     Enter an order under 11 U.S.C. §§ 542 and 105(a) directing the turnover of 2,456,692 SENATE tokens and 245,669,188 SIDUS tokens to Plaintiff;

72.     Enter an order under 11 U.S.C. § 362(k) awarding actual and punitive damages to Plaintiff for Defendant's violation of the automatic stay;

73.     Enter an order requiring that Defendant specifically perform its obligations under the SAFTs by transferring 2,456,692 SENATE tokens and 245,669,188 SIDUS tokens owed to Plaintiff;

74.     Enter an order requiring the Defendant to pay Plaintiff compensatory damages for breach of the SAFTs, in an amount to be determined at trial;

75.     Award Plaintiff its attorneys' fees, pre- and post-judgment interests, and costs of suit; and

76.     Award Plaintiff all other relief, at law or equity, to which it may be entitled.

Dated:  September 8, 2025
        Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew B. McGuire*
Adam G. Landis (No. 3407)
Richard S. Cobb (No. 3157)
Matthew B. McGuire (No. 4366)
Howard W. Robertson, IV (No. 6903)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
        cobb@lrclaw.com
        mcguire@lrclaw.com
        robertson@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Stephanie G. Wheeler (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Christopher J. Dunne (admitted *pro hac vice*)
Jacob M. Croke (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: wheelers@sullcrom.com
        gluecksteinb@sullcrom.com
        dunnec@sullcrom.com
        crokej@sullcrom.com

*Counsel for Plaintiff FTX Recovery Trust*